IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 04-60 GMS |
| | ) | |
| INVIVODATA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| PHT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 04-61 GMS |
| v. | ) | |
| | ) | |
| CRF, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| PHT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 04-821 GMS |
| v. | ) | |
| | ) | |
| ETRIALS WORLDWIDE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PHT'S ANSWERING BRIEF ON CLAIM CONSTRUCTION**

# TABLE OF CONTENTS

A.  Defendants' Proposed Constructions Seek to Exclude the Preferred Embodiment Disclosed in the '985 Patent............................................................. 2

B.  "Subjective Data" (from claims 22 and 34)......................................................... 5

C.  "Digitized Representation of Writing" ................................................................ 6

D.  "Digital Data Network" and "Public Data Network" ......................................... 6

E.  "Connection Device" ........................................................................................... 8

F.  CONCLUSION..................................................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    362 F.3d 1367 (Fed. Cir. 2004) ........................................................................... 2, 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ................................................................................. 1

*Teleflex, Inc. v. Ficosa N. America Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................... 2

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................ 2, 5

## FEDERAL STATUTES

35 U.S.C. § 103(a) ........................................................................................................ 3

## PHT'S ANSWERING BRIEF ON CLAIM CONSTRUCTION

Defendants left little room for substance in their opening *Markman* brief, having filled it instead with overblown rhetoric, mischaracterizations, and distortions of the record, such as figures "adapted" from those in the patent. Unlike defendants, PHT does not seek to rewrite the intrinsic record; rather, it relies on the patent as issued, including the claim language. PHT is content to rely on the claims as issued by the U.S. Patent and Trademark Office ("PTO"), and it focuses its argument on the claim terms disputed by the parties.[1]

PHT's brief centers on the appropriate construction of the terms in dispute, rather than incendiary language or misrepresentation. Central to many of the claim construction disputes in this case[2] is the question of disclaimer. Defendants allege that during prosecution applicants disclaimed not merely one embodiment of many described in the patent, but virtually every embodiment disclosed in the patent specification, including the preferred embodiment. Defendants are wrong. The doctrine of disclaimer is limited to "<u>clear</u>" repudiations of claim scope using "words or expressions of <u>manifest</u> exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed.

---

[1] As to terms not in dispute, as PHT stated in its Opening Brief on Claim Construction ("PHT's Brief") "no construction of the [undisputed] terms is necessary." (D.I. 39 (04-60); D.I. 36 (04-61); D.I. 34 (04-821), at 7.) PHT offers proposed constructions for each term in the asserted claims, in the event that the Court finds construction of those terms necessary. Defendants have not offered any proposed constructions for these terms, and PHT submits that, to the extent the Court considers constructions of these terms to be necessary, PHT's proposed constructions should be adopted. If the Court does not find that additional terms require construction, PHT relies on their plain meaning.

[2] This issue is relevant to the construction of the terms "capable of connecting directly" (claim 22); "single, unified, portable unit" (claim 22); "data transmission device of the portable unit" (claim 34); "connectable directly" (claim 39); and "connectable directly" (claim 40).

Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)) (emphasis added). Indeed, a claim interpretation that excludes a preferred embodiment from the scope of the claim is "rarely, if ever, correct." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004). This is not one of those rare cases. There has been no clear repudiation here. This Court should adopt the claim constructions proposed by PHT.

A.  **Defendants' Proposed Constructions Seek to Exclude the Preferred Embodiment Disclosed in the '985 Patent**

Defendants agree that the preferred embodiment of the invention, as described in the patent specification, includes an external modem (Defendants' Brief, p. 6). Nevertheless, at least five of Defendants' proposed constructions appear to seek to exclude the preferred embodiment.

The Federal Circuit has held that interpreting a claim to exclude the preferred embodiment requires "highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (emphasis added). The evidence offered by defendants to justify excluding the preferred embodiment from the scope of the claims does not begin to persuade, much less meet the highly persuasive threshold required by the Federal Circuit. Therefore, defendants' proposed constructions which seek to exclude the preferred embodiment should be rejected and PHT's construction should be adopted.

Defendants rely on statements made by the applicants during prosecution of the '985 patent in an amendment filed March 1, 1999.[3] But they misconstrue and

---

[3] The March 1st Amendment is included in the Joint Appendix, Exhibit C ("J.A., Ex. C").

2

misinterpret what was stated in that Amendment. A careful review demonstrates that, in making their arguments regarding patentability, applicants did not clearly and manifestly disclaim their preferred embodiment, which includes an external modem.

The March 1st Amendment was filed in response to an Office Action dated September 29, 1998 (J.A. Ex C, p. 1). In that Office Action, a number of claims[4] were rejected under 35 U.S.C. § 103(a) as being obvious over Fang, et al., U.S. Patent No. 5,128,552 ("Fang").[5] Fang was directed to "a method of and a system for maintaining a reliable power supply for a personal health monitor." (Fang, Abstract; col. 4:23-25). Fang discloses a personal health monitor which may be "used by a patient in his own home…to record certain of his own clinical parameters." (Fang, col. 1:16-19). The personal health monitor can be connected to a "<u>programmable computer</u>, such as a general purpose <u>personal computer</u>." (Fang, col. 28-37, emphasis added.) The personal computer may be used to transmit data to a central station, or the data may be transferred to the central station on a diskette or other storage medium. (Fang, col. 2, lines 17-23.)

In distinguishing Fang, applicants emphasized that their invention permitted direct access to a communications network "without requiring connection via a separate unit, ***such as a personal computer***." (J.A. Ex. C, p. 11, emphasis added). The explanatory phrase "such as a personal computer" does not suggest that an <u>external modem</u> would be considered a "separate unit," but rather was in reference to Fang's statement that its monitor could be attached to "a ***programmable computer*** such as a

---

[4] The rejected claims did not include any of the claims which ultimately were issued in the '985 patent.

[5] Fang is attached as Exhibit A.

3

general purpose *personal computer*." (Fang, col. 1:29-31, emphasis added.) Thus, the "separate unit" which applicants distinguished from their invention was a programmable computer, <u>such as</u> a personal computer, not a modem that is controlled by the data logger itself. Thus, applicants only meant that "there is no need for connecting the [data logger] to a *computer* or otherwise transmitting the data via a *secondary control unit*." (J.A. Ex. C, p. 11.) A secondary control unit means a unit, such as a computer, that can exercise some control over the data. A "dumb" modem, which is controlled by a transmission protocol of the data logger, is not a secondary control unit.

Nothing disclosed by Fang required that the applicants disclaim their preferred embodiment; nor did anything stated by the applicants in their amendment imply (much less require) that a system that used an external modem was outside the scope of the claims. [6]

Because the preferred embodiment (which uses an external modem) was not clearly disclaimed during prosecution, the claims should not be construed as

---

[6] Seeking any support possible for their untenable position, defendants also seek to rely on extrinsic evidence by citing a dictionary definition of "directly" (Defendants' Brief, p. 18). There is no justification for such reliance in this instance. In any event, their argument the definition of "directly" means that an external modem must be outside the scope of the claims, because "the definition provides no basis for selectively allowing some things to intervene (*e.g,.* modems), but not others (a computer)" is untenable. Defendants' position would exclude *any* item, including a wire/cable, a phone jack or Ethernet port, or even the air through which a wireless signal is transmitted, from intervening between the data logger and the communications network. Even defendants concede (by suggesting that an logger with an internal modem would be covered by the claims) that the use of a wire/cable to connect the data logger to the communications network would not take the unit outside the scope of the claims, as they must. Therefore, the word "directly" must be interpreted in the context of these patent claims to include some items which may be located between the data logger and communications network and to exclude others.

defendants seek, in a way that could exclude that preferred embodiment. *Globetrotter Software,* 362 F.3d at 1381; *Vitronics,* 90 F.3d at 1583.

Defendants other proposed constructions fare no better.

### B.    "Subjective Data" (from claims 22 and 34)

| Claim Language | PHT's Proposed Construction | invivodata's/CRF's Proposed Construction |
|---|---|---|
| a data logger that collects and records subjective data from a subject regarding the subject's psychological condition and subjectively observed physiological condition; | A component which can collect and record *data input by the patient* regarding the patient's psychological condition and subjectively observed physiological condition. | *data which is input by the patient* to the data logger, regardless of whether that data pertains to the subject or the subject's environment, and whether or not the information is objective or factual."[7] |

Defendants' proposed construction, in which the subjective data could also relate to "the subject's environment," ignores the claim language. PHT relies on the plain language of the claims to show that the subjective data must relate to "the patient's psychological condition and subjectively observed physiological condition." Defendants seemingly base their position on a passage in the specification stating that "the term subjective data will refer to that data which is input by the patient to the data logger 106, *regardless of whether that data pertains to the patient or the patient's environment.*" (Col. 5:40-43, emphasis added.)

To be sure, the specification states that "subjective data" can include data pertaining to the patient's environment, but the claims do not contain that limitation. And

---

[7] eTrials believes it is unnecessary to construe the term "subjective data," but does not oppose the construction offered by invivodata and CRF.

it is hornbook law that it is improper to import a limitation from the specification into the claims. Thus, the Court should reject defendants' position and adopt PHT's construction.

C.  **"Digitized Representation of Writing"**

Here too, defendants seek improperly to limit the claims. The dispute over this term (which pertains to dependent claims 29 and 30) is simple. Does the word "writing" incorporate a requirement that the patient's <u>handwriting</u> be digitally represented? The claim language is <u>not</u> limited to handwriting. Nor is a construction of this claim which limits the word "writing" to handwriting justified by the specification or the prosecution history. In fact, as conceded by defendants (Defendants' Brief, p. 32), the specification explicitly notes that in a <u>preferred</u> embodiment a digital representation of the patient's handwriting is captured (Col. 26:44-50). The description of handwriting as a <u>preferred</u> embodiment means that other, broader embodiments would include "writing," which is the exact word used in the claims and in PHT's proposed construction.

D.  **"Digital Data Network" and "Public Data Network"**

| Claim Language | PHT's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| a data transmission device of the portable unit that transmits data to the data storage location via a *digital data network.* | At least a portion of that transmission takes place on a digital data network - a network capable of transmitting digital data. | A network, *other than a telephone network*, that transmits data digitally rather than in analog form." |

Again attempting to re-write the claims, defendants rely on inferences gleaned from the specification and other, non-asserted claims, to attempt to show that

"digital data network" and "telephone network" are mutually exclusive terms. Again, defendants are wrong.

Defendants cite the use of the terms "digital data network" and "public telephone network" in non-asserted claims 46 and 47 as evidence of the fact that the terms "digital data network" and "telephone network" are mutually exclusive (Defendants' Brief, p. 28). But the fact that "digital data network" and "telephone network" might have <u>different</u> meanings hardly means that they are mutually exclusive. For example, if an independent claim were to recite "a food," and two dependent claims recited "a fruit" and "an apple" respectively, this would not mean that "a fruit" would exclude "an apple." Here, although telephone networks typically utilize digital data networks, not all digital data networks are telephone networks.

One of the dependent claims makes this clear. Claim 39, which depends from claim 34 and is, therefore, encompassed by it, recites a connection to a "public telephone network." Thus, the "digital data network" of claim 34 cannot exclude the "public telephone network" of claim 39.

Finally, defendants object to PHT's proposed construction of the term "via," arguing that its meaning would be clear to a jury (Defendant's Brief, pp. 29-30, n. 13). While PHT does not dispute that the term "via" is not a technical one,[8] PHT believes it is important to make explicit that "via" <u>does not</u> mean "exclusively by means of." Defendants implicitly acknowledge as much in the example provided in their brief: "[Via] is readily understood by anyone who drives to Philadelphia 'via' I-95."

---

[8] Webster's current on-line dictionary defines "via" as "by way of" or "by means of." Ex. B.

7

(Defendant's Brief, pp. 29-30, n. 13.) This cannot mean that the entire trip would be on I-95. For example, a traveler would have to drive to that highway from his or her starting point. That portion of the journey would not negate the fact that the drive to Philadelphia is "via" I-95. In the context of this claim, the fact that the data is transmitted to the data storage location "via" a digital data network does not mean that the data must travel exclusively over a digital data network.

### E. "Connection Device"

Defendants appear to be trying to manufacture a dispute about the meaning of this term, which occurs in claim 38. Defendants are eager to include non-limiting examples of what might constitute a connection device in the construction (Defendants' Brief, p. 34). While PHT does not object to this in principle, if examples are to be included, it would be equally appropriate to include "cable" as one of the examples.

F.   **CONCLUSION**

For the reasons stated above, PHT requests that the claim language for the disputed terms be construed in the manner proposed by PHT in the Joint Claim Chart.

Respectfully submitted,

Josy W. Ingersoll (#1088)
**YOUNG CONAWAY STARGATT
   & TAYLOR, L.L.P.**
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
jingersoll@ycst.com

Anthony Herman
N. Whitney Wilson
Scott C. Weidenfeller
**COVINGTON & BURLING**
1201 Pennsylvania Ave.
Washington, DC 20004-2401
(202) 662-6000

Dated: April 1, 2005                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on April 1, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Morris, Nichols, Arsht & Tunnell
>1201 N. Market Street
>Wilmington, DE  19801
>
>Richard L. Horwitz, Esquire
>Potter Anderson & Corroon LLP
>1313 North Market Street
>Wilmington, DE  19801

I further certify that on April 1, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

>Laurence S. Rogers, Esquire
>Avinash S. Lele, Esquire
>Ropes & Gray LLP
>1251 Avenue of the Americas
>New York, NY  10020
>
>Cecilia H. Gonzalez, Esquire
>Howrey Simon Arnold & White, LLP
>1299 Pennsylvania Avenue, N.W.
>Washington, DC  20004

Victor H. Polk, Jr., Esquire
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110


YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for PHT Corporation